**GUARANTY NATIONAL INSURANCE COMPANY, individually, and as Subrogee, Plaintiff–Appellee,**

v.

**FARMERS INSURANCE EXCHANGE, Defendant–Appellant.**

**No. 98CA0632.**

Colorado Court of Appeals, Div. V.

July 8, 1999.

Rehearing Denied Sept. 23, 1999.

Certiorari Denied June 19, 2000.

Nathan, Bremer, Dumm & Myers, P.C., Heidi J. Hugdahl, Denver, Colorado, for Plaintiff–Appellee.

Levy & Lambdin, P.C., Suzanne Lambdin, Janet S. Bouffard, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

In this subrogation action involving the payment of automobile insurance benefits, defendant, Farmers Insurance Exchange (Farmers), appeals the summary judgment entered in favor of plaintiff, Guaranty National Insurance Company (Guaranty). We reverse and remand for entry of judgment in favor of Farmers.

Ronald Harrod hired an employee to work for his construction company pursuant to an agreement whereby Harrod would drive the employee to and from the work site on a daily basis. Under the agreement, the employee neither contributed toward the transportation expenses nor compensated Harrod in any way for the agreement.

A few days after the employee was hired, Harrod and the employee were returning from the work site when the vehicle in which they were riding was struck from behind by another vehicle, injuring the employee. Harrod was driving and the employee was riding in the passenger seat.

The employee submitted a claim for personal injury protection (PIP) benefits to Farmers, which had insured Harrod's vehicle. Farmers denied the claim based upon the contention that, at the time of the accident, Harrod and the employee were involved in a "ridesharing arrangement" within the meaning of § 10–4–707(5), C.R.S.1998, and therefore, that the employee's own insurer, Guaranty, was primarily responsible for PIP coverage.

Subsequent to Farmers' denial of his claim, the employee submitted a claim for PIP benefits to Guaranty, which Guaranty paid. Guaranty later filed this action against Farmers in order to recover the benefits it had paid to the employee.

The parties filed cross-motions for summary judgment, and the trial court ruled in favor of Guaranty. The trial court found that the accident had occurred within the scope of the employee's employment. Based on that finding, it concluded, as a matter of law, that the employee could not have been involved in a "ridesharing arrangement." In so ruling, the court relied on *Loffland Brothers Co. v. Industrial Commission*, 714 P.2d 509 (Colo.App.1985) (*Loffland II* ) (when employer requires and provides transportation to employees, such transportation is within the scope of employment even though, generally, transportation to and from work is not so considered). This appeal followed.

Farmers contends that the trial court erred in concluding that Farmers, rather

than Guaranty, was responsible for payment of the PIP benefits. We agree.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). The parties stipulate, and we agree, that there are no issues of material fact in dispute. Thus, the propriety of the judgment is dependent only on resolution of the legal issue.

When interpreting a statute, we must effectuate the intent of the General Assembly by applying the plain and ordinary meaning of the terms. *Charnes v. Lobato*, 743 P.2d 27 (Colo.1987).

Here, the statute governing ridesharing arrangements is part of the Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S.1998. Specifically, § 10–4–707.5, C.R.S.1998, states, in pertinent part:

> (1) If an accident involved the operation of a motor vehicle being used in a ridesharing arrangement, as defined in subsection (2) of this section, then each person injured shall be afforded primary coverages as to all coverages provided in any complying policy under which such person is also an insured other than the complying policy insuring the motor vehicle out of the use of which the accident arose or insuring the operator of such motor vehicle.
>
> (2) As used in this section, 'ridesharing arrangement' means the vehicular transportation of passengers traveling together to and from such passengers' places of business or work ... and if no charge is made therefor other than that reasonably calculated to recover the direct and indirect costs of the 'ridesharing arrangement.'
> ... [ridesharing arrangement] includes 'ridesharing arrangements' commonly known as carpools, and vanpools....

■ Thus, the plain language of § 10–4–707.5 encompasses within the definition of "ridesharing arrangement" the situation in this case whereby the employer was giving a ride to the employee as a term of the employment agreement. Consistent with the definition of "ridesharing arrangement," Harrod was not charging the employee for the transportation. Accordingly, we conclude that the employee was involved in a "ridesharing arrangement."

■ We reject Guaranty's contention that § 10–4–707.5 applies only to ridesharing arrangements commonly known as carpools and vanpools. As quoted above, § 10–4–707.5(2), C.R.S.1998, states that the term "ridesharing arrangement" *includes* arrangements commonly referred to as carpools and vanpools. The word "include" is ordinarily used as a word of extension or enlargement. Thus, the definition encompasses other types of arrangements as well. *See Graven v. Vail Associates, Inc.*, 909 P.2d 514 (Colo.1995).

We further reject Guaranty's assertion that the resolution of this issue turns on how the definition of ridesharing arrangement applies within the context of § 8–40–201(8), C.R.S.1998, of the Workers' Compensation Act. Section 8–40–201(8) specifically excludes from the definition of employment under the Workers' Compensation Act "participation in a ridesharing arrangement, as defined in section 10–4–707.5(2), C.R.S...."

■ Based on this statutory definition, Guaranty contends that the definition of "ridesharing arrangement" excludes an arrangement whereby an employer gives a ride to an employee, and relies upon *Loffland Brothers v. Baca*, 651 P.2d 431 (Colo.App.1982)(*Loffland I* ) and *Loffland II*, *supra*. However, both *Loffland I* and *Loffland II* are distinguishable.

In *Loffland I*, a case involving a claim for workers' compensation benefits, the court held that where an employer required employees to travel a considerable distance to their job-site and where the employer made arrangements to transport the employees to the job-site, the resulting automobile accident occurred within the scope of the claimants' employment. There, the court considered only whether the accident had occurred within the scope of employment under the Workers' Compensation Act, not whether the definition of "ridesharing arrangement" included a ridesharing situation between employer and employee. Because *Loffland I* arose in the context of a workers' compensation claim, and the court there did not discuss the definition of ridesharing arrangement, it is inapposite here.

In *Loffland II,* another case involving a workers' compensation claim, the court held that injuries occurring during a ridesharing arrangement were outside the scope of employment. The court relied upon the definition of employment for workers' compensation purposes in § 8–40–201(8), C.R.S.1998, which specifically excludes "ridesharing arrangements." The court there distinguished the facts before it from those in *Loffland I,* noting: "Unlike the situation in [*Loffland I*] where transportation was especially provided by the company for the employees, here there were no such provisions." *Loffland II, supra,* 714 P.2d at 510.

Relying on *Loffland II,* Guaranty argues that, where an employer provides employees transportation as a condition of employment, no ridesharing arrangement exists. However, as noted, *Loffland II* arose in the context of a workers' compensation claim, and it was thus proper for that court to consider whether the accident occurred within the scope of employment under the Workers' Compensation Act. Furthermore, the court in *Loffland II* found that a ridesharing agreement existed where the employer was giving a ride to the employee, as is the case here.

Here, on the other hand, the employee sought benefits under the PIP statutes, rather than under the workers' compensation statute. Therefore, the controlling statute is § 10–4–707.5, which defines "ridesharing arrangement."

Because the trial court's analysis rested on determining whether the accident had occurred within the scope of employment under the Workers' Compensation Act to determine whether a "ridesharing arrangement" existed, it did not first consider whether there was a "ridesharing arrangement" pursuant to § 10–4–707.5. In so doing, the trial court erred.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded for entry of judgment in favor of Farmers.

Judge ROTHENBERG and Judge ROY concur.